THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. JAMES SMITH.

**No. 10737.**

1. MALICIOUS PROSECUTION — *Question of Law.* Where there is no controversy as to the essential facts, the question of probable cause for a criminal prosecution is one of law.

2. ———— *Larceny from Railroad Company — Probable Cause for Prosecution.* Numerous burglaries and larcenies were committed on the cars of the defendant railroad company on a portion of its line on which plaintiff was employed as engineer, and many of the stolen goods were found in the possession of a freight conductor whose train was sometimes hauled by an engine in charge of plaintiff. The conductor, being apprehended, charged the en-

gineer and other trainmen with participation in the crime.   The plaintiff was thereupon arrested and held for trial for the burglaries and larcenies, but was discharged without ever having been brought to trial.   He was in fact innocent of the crime, but the defendant had no certain knowledge as to his guilt or innocence. *Held,* that the evidence does not show a want of probable cause.

Error from Jefferson district court; L. A. MYERS, judge.   Opinion filed December 10, 1898.   Reversed.

*A. A. Hurd,* and *Stambaugh & Hurd,* for plaintiff in error.

*Waters & Waters,* and *W. F. Gilluly,* for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: This action was brought by James Smith against the railroad company to recover damages for alleged malicious prosecutions.   The petition charges that on the 26th day of January, 1893, the defendant procured three complaints to be made by one Fritter, its agent at La Junta, Otero county, Colorado, before a justice of the peace, charging the plaintiff with the crime of burglary and larceny in freight-cars on the defendant's railroad; that the plaintiff was arrested under warrants issued on these complaints, committed to jail, and that the prosecutions were afterwards dismissed by the prosecuting attorney; that after the discharge of the plaintiff from these prosecutions he was again arrested on four warrants issued by a justice of the peace of Las Animas county, Colorado, on complaints filed by E. B. Leonard, the agent of the defendant at Trinidad, acting under the defendant's direction, charging him with like burglaries and larcenies in Las Animas county; that these prosecutions were also terminated by the prosecuting officer, who dismissed the cases; that on the 28th day of January,

1893, while the plaintiff was confined in the county jail of Otero county, the defendant wilfully and maliciously procured a search-warrant from a justice of the peace of Colfax county, New Mexico, and caused the premises of the plaintiff at Raton, N. M., to be searched for stolen property by the deputy sheriff of Colfax county. The petition alleges that all these prosecutions were malicious, without probable cause, and instituted and carried on by the defendant for the purpose of injuring him. A motion having been made and sustained requiring the plaintiff separately to state and number the several causes of action set up in the petition, the plaintiff amended by interlining, just preceding the prayer of the petition, the following:

"The plaintiff avers that he brings this suit as one cause of action; that he avers the fact to be that the defendant, actuated by a malicious intention and design to ruin the plaintiff, to cause him expense he could not bear, and to causelessly punish him, did perform and cause to be performed all the acts aforesaid, and that all said acts were taken by defendant in pursuance of said design originally formed."

A motion was made to dismiss the case on the ground that the plaintiff had failed to comply with the order to state and number his causes of action separately. This motion was overruled. After the overruling of a demurrer to the petition the defendant answered, denying generally the matters charged in the petition. On the 4th day of February, 1896, the case was called for trial, and the defendant asked a continuance on the ground that the issues had not been made up in time for trial at that term of court. This was refused and a jury was thereupon impaneled. The plaintiff offered in evidence certain of the papers and copies of the records in the cases prosecuted against him in Colorado, testified in his own behalf,

and rested his case. A demurrer to the testimony was filed and overruled. The defendant offered the depositions of the district attorney of the district including Otero county, Colorado, of his deputy at La Junta, and of the district attorney of Las Animas county. The court, by its instructions, submitted the question of probable cause for the prosecution, as well as all questions of fact to the decision of the jury, and they returned a general verdict in favor of the plaintiff for $10,000 damages. A motion for a new trial having been made and overruled, the railroad company brings the case here for review.

·The objection urged against the sufficiency .of the petition on the ground that it states in one count a number of separate and distinct causes of action is not good. The plaintiff had a right to treat all the prosecutions as connected, instituted and carried on under a continuing purpose to injure him.

It is unnecessary to discuss the minor questions raised by counsel for the railroad company. The principal question decisive of this case is whether the prosecutions complained of were instituted without probable cause. This was submitted to the jury as a question of fact. As there was no substantial conflict in the testimony bearing on the question it should have been determined by the court as a matter of law. (*Drumm v. Cessnum*, 58 Kan. 331, 49 Pac. 78, and cases cited.) It appears from the plaintiff's own testimony that a large amount of property had been stolen from the cars òf the railroad company, and that much of it was found in the house of Crotty, a conductor of a freight-train which was sometimes hauled by the engine in charge of the plaintiff as engineer. A detective named Landon had been put at work as a brakeman on the part of the road where property was being sto-

len, and some of the stolen property was found in Landon's house. Quite an exhibit of stolen property was brought into the court-room both at La Junta and Trinidad. A considerable number of trainmen were arrested on charges similar to those lodged against the plaintiff. At the preliminary examination before a justice of the peace at La Junta, Crotty and Landon testified against this plaintiff. Crotty stated that he had stolen from the company the things mentioned in the complaint, and that he had broken into box cars of the railroad company and stolen goods many times. He implicated a dozen or fifteen persons, and the plaintiff among the number. He said that they stopped between stations and took the stuff out of the cars, mostly between La Junta and Trinidad. He mentioned Thatcher and a place between Thatcher and Fillmore as places where the plaintiff was connected with the crimes. He claimed that the plaintiff came back and got some things and that others were taken by Crotty to the engine for the plaintiff. The plaintiff said on the witness-stand that he expected there was a considerable amount of merchandise stolen by the men who did the stealing, but that he was innocent of all connection with the crime, and that Crotty was a man of very bad reputation. At the preliminary examination no testimony was offered on behalf of the defendant, (plaintiff below in this action,) and he was bound over.

The testimony of the prosecuting attorneys tends to show that they received their information as to the connection of the plaintiff with the burglaries from Mr. Swain, who represented himself to be the general manager of a detective agency and the sheriff of Otero county. On this information complaints were drawn, and sworn to by Fritter, the agent of the railroad com-

pany at La Junta. The state, having failed to convict another defendant charged with one or more of the same series of crimes, dismissed the prosecutions in that county, and there was a question as to the county in which some of the crimes were committed. On the dismissal of the cases in Otero county the prosecutions in Las Animas county were started. Smith was arrested and taken to Trinidad, where he gave bond for his appearance at the district court. The cases were never brought to trial, and, after continuance over one term of court, were dismissed. After his discharge from the service of the company Smith made many fruitless efforts to obtain employment as an engineer. He claims that his failure was due to the unfriendly attitude of the defendant toward him, and that when he applied to the general manager for an investigation in order that he might show that he was wrongfully prosecuted the latter refused to give him a hearing.

That the prosecutions and the hostile attitude of the railroad company toward the plaintiff have resulted in serious injury and loss to him is clear. He was not only discharged from the service of the defendant, but the discharge was made under such circumstances as to leave him resting under the suspicion of guilt, which it has refused to. make any effort to remove. For an innocent man thus to be deprived of all opportunity to follow that calling for which he was trained and especially fitted, through unjust suspicions and prosecutions, cannot fail to excite strong sympathy, but courts have no license to be guided by their sympathies. Before the defendant company can be held to respond in damages for these prosecutions it must appear that they were instituted maliciously and without probable cause. Counsel for the defendant very

strenuously insist that the railroad company is not responsible for the prosecutions ; that the evidence fails to show that it authorized them, and does show affirmatively that they were instituted and directed by the proper prosecuting officers of Otero and Las Animas counties, Colorado. We shall assume, but without expressing any opinion as to the correctness of the assumption, that the railroad company authorized the prosecutions and is responsible for them.

The principal question is, Was there probable cause to believe that the plaintiff was a party to the crimes for which he was prosecuted? Many such crimes were committed on the line of the defendant's railroad, and that they were committed by coemployees of the plaintiff, engaged in operating the trains hauled by the engine under the plaintiff's charge, is a conceded fact. It is also clear that it was the duty of the railroad company, not only to itself but to the general public, to make a vigorous effort to ferret out the criminals and bring them to justice. Having caught Crotty, the conductor, in possession of a large amount of the plunder, they obtained from him a confession and a statement as to who were his accomplices. Among them the plaintiff was named. It is strenuously insisted that Crotty, being not only a thief but a man of bad character in every particular, ought not to have been believed, and that his mere statement was insufficient to warrant an arrest. In the detection of crime it is often found necessary by prosecuting officers to act on the statements of confessed criminals, and their testimony, when corroborated by circumstances, is often accepted and acted on by juries. In this case it was not Crotty's statements alone that tended to cast suspicion on the plaintiff, but these were corroborated by the fact that larcenies were com-

mitted from the trains hauled by the engine of which the defendant had charge.   It was claimed, also, that stops were made on the line of the railroad away from any station and goods there taken from the cars and secreted.   The testimony of the prosecuting attorneys shows that in directing complaints to be filed they acted on information derived from detectives and the sheriff.   Just what this information was does not appear.

Under all these circumstances we are forced to the conclusion that there was probable cause for a prosecution against the plaintiff, and that the evidence tends to show that the prosecution was instituted rather for the purpose of punishing a man believed to be guilty than of maliciously oppressing an innocent one.   The statements of the plaintiff as to what was said by the general manager, while indicating that he still entertained a belief of the plaintiff's guilt, do not show any malicious purpose to injure him.   Under the plaintiff's own showing we are forced to hold that there was probable cause for the prosecutions and that no cause of action was proved against the company.   The judgment is, therefore, reversed.