No. 22,830.

JOHN F. BUCHANAN, *Appellee*, v. THE IOWA STATE LIVE
STOCK INSURANCE COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. INSURANCE—*Foreign Insurance Company—Service on Superintendent of Insurance—Statute Construed.* A foreign insurance company obtained authority to transact business in the state and filed its consent that it might be brought into the courts by service of summons upon the superintendent of insurance. While conducting business under the state license an insurance contract was executed under which proofs of loss were made, and the loss was paid. Afterwards the agent of the company claimed that the insured had obtained payment of the loss by fraud and false pretenses and instituted a prosecution against the insured, which resulted in a dismissal and a discharge of the defendant. Later the insured began an action against the company to recover damages for malicious prosecution, by the service of a summons on the superintendent of insurance, but after the termination of the prosecution and prior to the commencement of the action for malicious prosecution, the authority granted by the state to the company was revoked by the insurance department, after which it ceased to do any new business in the state and left the collection of premiums and the closing up of unfinished business in the hands of an agent bank. *Held*, that the service of summons upon the superintendent of insurance in the suit for malicious prosecution is sufficient to bring the company into court.

2. MALICIOUS PROSECUTION—*When Advice of Counsel Will Absolve from Liability.* In an action for malicious prosecution the fact that a person took the advice of counsel as to probable cause for instituting the prosecution will not absolve him from liability unless he made a full disclosure of the facts to the counsel.

3. SAME—*Termination of Prosecution.* The prosecution must be terminated before an action for malicious prosecution can be maintained, but a dismissal of the prosecution and the final discharge of the defendant satisfies the requirements of the law as to the termination of the prosecution.

4. SAME—*Duty of Court to Instruct as to What Facts Would Constitute Probable Cause.* Whether certain facts, sought to be established, exist is a matter of fact for the determination of a jury; but whether particular facts, if found to exist, do or do not constitute probable cause is strictly one of law for the decision of the court, and it is error to submit it to the jury.

Appeal from Shawnee district court, division No. 1; JAMES
A. McCLURE, judge. Opinion filed March 12, 1921. Reversed.

*James A. Troutman,* of Topeka, for the appellant.

*D. H. Branaman,* and *W. E. Atchison,* both of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover damages for malicious prosecution. The plaintiff prevailed and defendant appeals.

The defendant is an Iowa corporation, which had been authorized to do business in Kansas and had filed its written consent irrevocable that actions might be commenced against it in the courts of the state by the service of process on the superintendent of insurance. In December, 1917, it issued a policy insuring a cow of John F. Buchanan, in which it was stipulated that it should be void in the event that he should become other than the sole and unconditional owner of the animal. It appears that he contracted to sell the cow to one Clayborne who gave a title note therefor and took possession of the cow. On May 24, 1918, the cow died and shortly afterwards Buchanan presented a claim for insurance on the theory that he was the sole owner of the animal. Proofs were made and the insurance was paid to him by the company. Shortly afterwards the agent of the company started an inquiry as to the ownership of the cow and concluded that Buchanan was not the owner and had obtained the insurance by false representations and pretenses. He demanded the return of the insurance and, this being refused, the agent of the company instituted a prosecution and caused the arrest of Buchanan for obtaining money by false pretenses. After several postponements of trial and the inability of the state to procure the testimony of a certain witness the case was dismissed and Buchanan was discharged. He then instituted this action by obtaining service of process upon the superintendent of insurance.

The first question presented is as to whether or not jurisdiction of the insurance company was obtained by this service upon the superintendent. A motion to quash the service was made on the ground that on March 29, 1919, the superintendent of insurance revoked the authority of the company to do business in the state. Shortly after receiving notice of the cancellation of authority the insurance company closed its offices and

moved its books, records and effects to its headquarters in Iowa. Did the cancellation of the permit to do business end the authority of the superintendent to accept service of summons for the company? While the consent of the company filed with the insurance department under section 5213 of the General Statutes of 1915 was in terms irrevocable, it has been held that it did not mean that the consent could never be revoked, abrogated or withdrawn but that when a company withdrew from the state and no longer transacted business here, the power of the superintendent to accept service would terminate. (*Life Association v. Boyer*, 62 Kan. 31, 61 Pac: 387.) In the cited case it was said:

"It may be conceded that the superintendent of insurance has an interest, as a public representative, in the continued exercise of the power conferred upon him to accept service for foreign life insurance companies, but that interest must surely terminate with the termination of the subject-matter in respect to which the authority was conferred. When within the intent of the parties to the instrument there no longer remains anything for the authority to act upon, the power to act must of. necessity end. 'Where the agency was created for the purpose of performing some specific act or acts, it will be terminated by the accomplishment of the purpose which called it into being. Having fulfilled its mission it is henceforth *functus officio.*' (Mech. Agency, § 201.) With the withdrawal of the insurance company from this state the subject-matter in respect to which the power was conferred, to wit, the business here transacted by the company, terminated, and, with the probable exception above mentioned, the company ceased to be amenable to our jurisdiction." (p. 40.)

This authority recognizes that the power of the superintendent to accept service of process does not necessarily end with the revocation of license but "rather that it terminates with the termination of the subject matter in respect to which the authority was conferred." (p. 41.) It does prevent the soliciting of new business; but that business which was begun under the authority conferred must of course be concluded and the final clearing up of that business must be regarded as the doing of business under the irrevocable consent. In the Boyer case it was remarked:

"It may be that the insurance company was in fact doing business in this state notwithstanding its claim of abandonment. It may be that the mere collection of premiums in this state from citizens here is such a doing of business as to subject the company to the jurisdiction of our courts." (p. 42.)

When the license was revoked the company had outstanding policies on which there were premiums to be collected and accruing insurance to pay. A bank in Topeka was designated as the agent of the company for the transaction of its unfinished business. The insurance in question was taken while the company was acting under the authority of the state and the prosecution was begun and ended before the license was revoked. As to the unfinished business the service upon the superintendent even after the cancellation of authority was sufficient to bring the insurance company into court. (*Mutual Reserve Etc. Assn. v. Phelps,* 190 U. S. 147.) The action of the company in paying the insurance and its efforts to secure the return of the same including the commencement of the prosecution upon the ground that the plaintiff had fraudulently obtained the insurance, were all taken and carried on as a part of its business in the state. It is answerable for a malicious prosecution instituted in connection with its business and for the purpose of protecting its funds, and therefore the service on the superintendent was sufficient.

It is contended that Guth, the secretary of the defendant, acted on the advice of the deputy county attorney in bringing the prosecution, and is therefore absolved from liability for damages. The advice of counsel that there is probable cause for a prosecution is a protection from liability where the defendant has sought and acted upon the advice in good faith and where there has been a full disclosure of the facts to the counsel. Here there was testimony to the effect that Guth withheld important facts from the deputy county attorney as to the application and collection of the insurance. There is also testimony that he failed to inform counsel as to statements made by an agent of the company which tended to exculpate the plaintiff and show an absence of probable cause for the prosecution. It is claimed by defendant that the agent was prejudiced and his statements unworthy of belief. The credibility of the agent and the truth of his statements were for the jury but of course the question of whether the facts, if true, constituted probable cause, was one of law for the determination of the court. Under the evidence which is disputed it cannot be said that there was a full disclosure of the facts to the deputy county attorney nor that the defendant had acted

in good faith in beginning the prosecution. Certain letters exchanged between the defendant and its agent and attorneys touching the subject of probable cause, which were of a self-serving character, were properly excluded upon the objection of plaintiff.

Complaint is made of an instruction to the effect that the prosecution must be terminated before an action for malicious prosecution can be maintained, but that a trial on the merits and an acquittal are not essential to the maintenance of the action, and further that if it was found that the suit was dismissed for want of prosecution and the defendant discharged, that would amount to a termination of the prosecution. Within our authorities the dismissal of the action for want of prosecution and the discharge of the defendant satisfies the requirements of the law as to the termination of the prosecution. At the time of the dismissal of the case the state was asking for a continuance in order to procure absent testimony, but the continuance was denied and the case dismissed and the prosecution has never been renewed. It has been decided that—

"In an action for malicious prosecution we suppose that the plaintiff must allege and prove that he has been prosecuted by the defendant, that the prosecution was malicious, that it was instituted without probable cause, that the prosecution has terminated in his favor, and that he has sustained damage. But it is not necessary that there should have been a trial upon the merits of the alleged malicious prosecution. If the action has been dismissed as in this case that is sufficient if the action has not been commenced again." (*Marbourg v. Smith*, 11 Kan. 554, 562. See, also, *Schippel v. Norton*, 38 Kan. 567, 16 Pac. 804.)

The instruction of the court relating to probable cause is also challenged. After defining "probable cause," the court said:

"If you believe from the evidence that there was probable cause as above defined, on the part of the defendant company, its officers and agents for instituting said criminal suit, and causing the arrest of the plaintiff therein, then your verdict should be for the defendant company. On the other hand should you believe from the evidence that there was not probable cause and you also find the other elements necessary to plaintiff's recovery elsewhere defined in these instructions, then your verdict should be for the plaintiff."

As given, the court left the question of what facts constituted probable cause entirely to the determination of the jury. This was error. Whether certain facts sought to be estab-

lished exist, are matters of fact for a jury, but whether the facts do or do not constitute probable cause for instituting a prosecution is not a jury question, but strictly one of law for the decision of the court. In *Michael v. Matson*, 81 Kan. 360, 105 Pac. 537, it was said:

"In an action for malicious prosecution the question of what information is sufficient to warrant a reasonably prudent man in believing another guilty of a crime is one of law, and it is substantial error to submit it to the jury. An instruction that in order for probable cause for an arrest to exist the facts must be such as would justify an ordinarily prudent person in entertaining a belief in another's guilt, and that whether such facts had come to the knowledge of the defendant at the time he caused the arrest of the plaintiff is a question for the jury to determine, is likely to be understood by the jury to mean that they are to decide not only what information the defendant had but whether it was enough to justify a reasonable belief in the plaintiff's guilt. Such an instruction, unless accompanied by a clear and accurate statement of what specific facts under the circumstances of the particular case would, if found to exist, be sufficient under the law for that purpose, is materially erroneous." (Syl. ¶ 1. See, also, *Drumm v. Cessnum*, 58 Kan. 331, 49 Pac. 78; *Railway Co. v. Allen*, 70 Kan. 743, 79 Pac. 648; *Stewart v. Sonneborn*, 98 U. S. 187.)

Not only the truth of the circumstances and existence of the claimed facts were submitted to the jury, but questions of law, as to whether particular facts on which evidence was given amounted to probable cause, were likewise submitted. It was the duty of the court to tell the jury whether the particular facts if found to exist did or did not constitute probable cause. The absence of probable cause is an essential element of the action. The evidence concerning it in the case is in dispute. No one can tell upon what concrete facts the jury rested its decision as to the presence or absence of probable cause. This was an important phase of the trial and we cannot say that the erroneous action was without prejudice.

Some other objections were made to rulings but in them we find nothing substantial.

For the error in the instructions the judgment is reversed and the cause remanded for a new trial.