THOMAS v. WINTERS.

BIRD v. SAME.

MALICIOUS PROSECUTION—PROBABLE CAUSE.

In action for malicious prosecution in charging plaintiffs with stealing automobile, where it appears that said complaint was made by defendants at request or direction of police officers, who claimed to have information as to where car was and who stole it, defendants had probable cause for making said complaint, constituting complete defense.

Appeal from Wayne; Ferguson (Homer), J. Submitted April 21, 1932. (Docket No. 22, Calendar No. 36,306.) Decided June 6, 1932. Rehearing denied September 14, 1932.

Separate actions of case by Perry Lewis Thomas and Elsie Bird against Charles C. Winters and another for malicious prosecution. Cases consolidated for trial. Judgments for plaintiffs. Defendants appeal. Reversed, without a new trial.

*Angell, Turner, Dyer & Meek,* for plaintiffs.

*Munro, Powell, Wing & Covey (Leo Wing,* of counsel), for defendants.

CLARK, C. J. These two actions in malicious prosecution were consolidated and tried without a jury. Plaintiffs had judgments. Defendants have appealed. There must be reversal, as probable cause for making the complaint is established.

Anderson bought an automobile from Low Dollar Car Market. The paper arising upon the sale was discounted with defendant Central Discount Company, a corporation. Anderson reported to police

As to probable cause for making arrest, see annotation in 51 L. R. A. 225; 42 L. R. A. (N. S.) 75; L. R. A. 1915B, 506.

department of the city of Lansing that the car had been stolen. Later the following letter was written and received:

"City of Lansing Police Department
"Alfred Seymour, Chief.

"Lansing, Michigan, March 2, 1927.

"Low Dollar Car Market,
  "2773 Cass Ave.,
    "Detroit, Michigan.
"Gentlemen:

"On January 4, 1927, David Anderson, formerly of 311½ N. Washington avenue, Lansing, reported to us his Maxwell coupe was stolen. License No. 290-029 (1926), motor No. 473621, serial No. 440347. We have since learned who took the car and that they have left Michigan with it. In order to apprehend them we tried to get in touch with Mr. Anderson and have him sign complaint for warrant, but were unable to locate him.

"We are informed you have an interest in this car and writing you to see if you care to send someone to Lansing to obtain warrant for these parties.

"Please let us hear from you at once about this.
                "Sincerely yours,
                  "Alfred Seymour,
                    "Chief of Police."

The letter was forwarded to Central Discount Company, which did not at once become active. It was protected by insurance. Then the Lansing police department called Central Discount Company by telephone, of which:

"*A.* They said that it was the Lansing police department calling, and asked if we realized it was necessary for a representative of the company to be in Lansing, to sign some papers in connection with the Anderson car theft.

"*Q.* Go ahead.

"*A.* And I said I did not know it was obligatory, but we would have someone down there as soon as possible.

"*Q.* Did you go?

"*A.* No.

"*Q.* Why not?

"*A.* I was busy with details.

"*Q.* Did you communicate that? What did you communicate to Mr. Winters in relation to those circumstances?

"*A.* Just what was said.

"*Q.* Just what was said?

"*A.* Yes.

"*Q.* Did Mr. Winters go to Lansing?

"*A.* Yes."

Winters was president of the Central Discount Company. He went accordingly to the office of the chief of said police and talked with secretary of the chief and other police officers, who said they knew where the car was and who had stolen it, and told him to make complaint, and

"*A.* I believed it, because they were officers of the State, and I thought that they knew what they were doing, that they knew their business, and they requested me to sign it, and prepared it, and that is all there was to it.

"*Q.* That is the whole thing in a nutshell, isn't it?

"*A.* That is all."

A police officer conducted Winters to the office of the assistant prosecuting attorney of the county, to whom the officer stated in outline the facts, and the attorney O. K.'d the complaint. Winters said little or nothing. The plaintiffs were arrested and later released.

As to what is probable cause, we quote syllabi of *Wilson* v. *Bowen*, 64 Mich. 133:

"To constitute probable cause, there must be such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the person arrested is guilty of the offense charged.

"A person may have 'probable cause' for making a criminal complaint from information received from others, which he honestly believes to be true, and of such a character, and obtained from such sources, that business men generally, of ordinary care, prudence, and discretion, would act upon it under such circumstances, believing it to be reliable."

We think an ordinarily cautious man, under the circumstances above set forth, being requested, if not directed, by officers of the law to make complaint, knowing they had had the matter under investigation and being told by them that the car had been stolen, and that they knew where it was and who had stolen it, would sign complaint. We think defendants had probable cause.

Whether Anderson was credible or otherwise is not important, as it appears defendants relied on the police officers. *Birdsall* v. *Smith*, 158 Mich. 390; *Rogers* v. *Olds*, 117 Mich. 368.

Reversed, without new trial, and with costs.

McDonald, Potter, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.